IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

               Plaintiff,                             Criminal No. 23-114

       v.                               ELECTRONICALLY FILED

JAIMON WOODS,

               Defendant.

**MEMORANDUM OPINION AND ORDER
ON DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Before the Court is Defendant's Motion to Suppress (ECF 99). The Government filed a Response. ECF 106. The Court held a suppression hearing on December 17, 2024. Following the hearing, each party submitted proposed findings of fact and conclusions of law based on the testimony adduced at the hearing. ECF 121 and ECF 122. In addition, per Defendant's request, the Court allowed Defendant to file supplemental findings of fact and conclusions of law. ECF 131. The Government was also given the opportunity but declined to do so. See ECF 130. The matter is now ripe for adjudication.

**I. BACKGROUND**

This case comes to the Court on a Criminal Complaint dated June 1, 2023. ECF 1. However, Defendant has appeared before this Court in a prior federal multi- defendant case, and therefore, some the background from the earlier case is noted below.

Defendant previously came before this Court in case number 18-cr-152 (hereinafter "the 2018 case"), as one of twenty-three indicted defendants in a conspiracy case involving guns and drugs. See, case no. 2:18-cr-00152-AJS-20, generally. Defendant pled guilty in that case to being

a felon in possession of firearms and ammunition in violation of 21 U.S.C. § 922(g)(1). He was sentenced by this Court to a 70-month term of imprisonment to be followed by a three-year term of supervised release. See docket entry 1384 in the 2018 case. Defendant's supervised release in the 2018 case commenced on December 23, 2022, and within six months, on June 2, 2023, a Petition for Warrant or Summons for Offender under Supervision was filed by Defendant's federal probation officer. See docket entry 1843 in the 2018 case. The Petition in the 2018 case indicated that Defendant had violated several conditions of his supervised release based on alleged criminal activity that took place on two different dates: March 26, 2023, and June 1, 2023. Id. Defendant's alleged criminal activity on those dates led to the filing of a Criminal Complaint in the instant matter (23-cr-144).

On March 26, 2023, a McKees Rocks police officer (Officer Eric Cersosimo) stopped a car registered to Defendant for failing to use a turn signal while making a turn. Defendant was a passenger in the car and his girlfriend was the driver. Upon approaching the car, Officer Cersosimo smelled marijuana and saw a half-smoked marijuana blunt, in and ashtray located in the cup holder. When the officer asked the driver to produce her identification, Defendant's girlfriend opened her bag, attempting to shield its contents from Officer Cersosimo, but he observed what looked to be clear jar of marijuana in her bag. When asked if she would consent to a search of the vehicle, Defendant's girlfriend declined, and the car was towed to the McKees Rocks Police station until a search warrant could be obtained.

On March 26, 2023, a search warrant for the vehicle was obtained, and a Smith & Wesson .380 caliber handgun with an extended magazine was retrieved from the center console of the vehicle. In addition, marijuana was recovered from the side pouch of the girlfriend's purse along with plastic baggies. A small black digital scale was also recovered from the vehicle. The

recovery of these items pursuant to the search warrant led to an arrest warrant for Defendant dated May 31, 2023.

On June 1, 2023, the McKees Rocks police executed the arrest warrant for Defendant. Defendant was in a vehicle at the time of his arrest, and after removing him from the car, during the pat down process, a Beretta 9000s handgun was found tucked into Defendant's waistband. Baggies with crack cocaine were found inside the vehicle's center console. As a result of finding the Beretta and the crack cocaine, a criminal complaint was filed in the instant matter.

The following day, on June 2, 2023, Defendant's Federal Probation Officer filed a Petition for Warrant or Summons for Offender Under Supervision in the 2018 case. See docket entry 1843 in the 2018 case. This petition indicated that Defendant, had violated several conditions of his supervised release on March 26, 2023, and then again on June 1, 2023.   Id. This Court, after discussion and agreement with counsel for Defendant and the Government, agreed that disposition of the charge in the instant matter (the alleged June 1, 2023 possession of a firearm and ammunition by a convicted felon in violation of 18 USC 922(g)(1)), should be determined, first, as it would directly impact the disposition of the alleged June 1, 2023 supervised violation set forth in the Petition in Defendant's 2018 case.

On August 30, 2024, Defendant filed a counseled "Supplemental" Motion to Suppress,[1] and in this Motion, Defendant argued that his June 1, 2023 arrest was based solely on illegally obtained evidence – specifically the Smith & Wesson handgun retrieved from Defendant's

---

[1] Although Defendant was represented by counsel, Defendant wrote and mailed a letter to the Court which was filed on July 3, 2024. ECF 76. This letter suggested, among other things, that Defendant believed data from his Toyota App needed to be obtained "at the time my vehicle got repo-ed." Id.  This was a reference to the March 26, 2023 incident, and this Court ordered his attorney to meet and confer with Defendant about this matter. ECF 78. Shortly thereafter, on August 30, 2023, Defendant's counseled Supplemental Motion to Suppress Evidence (ECF 99) was filed.

Toyota on March 26, 2023 – rendering his arrest on June 1, 2023, illegal, requiring the Beretta handgun seized at the time of his [alleged] illegal arrest on June 1, 2023 to be suppressed.

The Government field a response to Defendant's Supplemental Motion to Suppress indicating: (1) on March 26, 2023, there was reasonable suspicion of a traffic violation enabling the officer to stop the Toyota Camry registered to Defendant; (2) no search of the Camry took place prior to the issuance of a search warrant; (3) probable cause existed to support the issuance of a search warrant; and (4) upon locating a firearm inside the vehicle, probable cause existed for the issuance of the arrest warrant for Defendant.  ECF 106.

This Court held a hearing on Defendant's suppression motion on December 17, 2024. During the hearing, the only person to testify was Officer Eric Cersosimo. ECF 120.

Following the hearing each party submitted proposed findings of fact and conclusions of law.  ECF 121, ECF 122. Defendant also offered supplemental findings. ECF 131. The Court has considered all these written submissions, the testimony elicited from Officer Cersosimo at the suppression hearing, exhibits proffered at the hearing, and the oral arguments made during the hearing by counsel. For the reasons that follow, the Court will deny Defendant's request to suppress evidence.

## II. FINDINGS OF FACT

### A. The Vehicle Stop on March 26, 2023

1. Officer Cersosimo was the only witness to testify at the Suppression Hearing. ECF 120, p. 2.

2. During the hearing, Officer Cersosimo stated that he was a task force and/or patrol officer on the night of March 26, 2023, and as such, he was responsible for authoring affidavits. Id., p. 7.

3. Officer Cersosimo testified that while on patrol during his 3 pm to 11 pm shift the night of March 26, 2023, he was traveling behind a black Toyota Camry along Ella Street in McKees Rocks.

4. When the Camry turned, from Ella to Gardner Street without signaling, Officer Cersosimo initiated a traffic stop.[2]  Id., p. 8-10.

5. This traffic stop was conducted at 6:08 pm. Id., p. 10.

6. After notifying dispatch of the stop, Officer Cersosimo approached the vehicle, noting that it had heavy window tint, and spoke to the driver of the car, India Northington. Id., p. 11.

7. Defendant was seated in the passenger seat of the Camry.[3] Id.

8. After she rolled down her window, enabling Officer Cersosimo to see into the front interior of the car, he asked Northington to produce her driver's license, at which time she told Officer Cersosimo it was in her bag, located in the backseat. Id. p. 11 -12.

9. Defendant reached into the back of the car and while he did so, Officer Cersosimo attempted to use his flashlight to shine light into the backseat through the rear

---

[2] Officer Cersosimo testified that the vehicle was within his line of sight as it executed the turn, and never signaled. Id., p. 38.  He also noted that after activating his lights at the corner of Ella and Gardner the Camry continued to travel down Gardner Street the distance of about two house-lengths before stopping in front of Defendant's residence. Id., p. 38-39.

[3] Officer Cersosimo testified that he knew that Defendant was the registered owner of the vehicle when he stopped the Camry, and despite the fact he is a drug task force officer for the McKees Rocks area, he did not know Defendant, nor did he know Defendant was a gang member who had recently been released from federal prison. Id., p. 34. Additionally, Officer Cersosimo never charged Defendant with heavy window tint nor failing to use a turn signal because he was not driving the car at the time of the stop. Id., p. 36.

window, but no light penetrated into the car due the dark tint on the window. Id. p., 12.

10. Defendant produced a grey-and-white checkered, Louis Vuitton bag.  Id., p. 12.

11. Upon receiving her bag from Defendant, Northington "kept it halfway closed" in an attempt to look discreetly through the bag for her identification. Id. p. 14-15, 53.

12. While she was attempting to look through her bag, Officer Cersosimo observed some of the bags' contents and noticed what looked like a glass jar with a leafy substance inside. Id., p. 15, 53.

13. In addition, Officer Cersosimo noted a half-smoked marijuana blunt in the front of the car, sitting in an ashtray in the cupholder, and smelled a strong odor of marijuana coming from inside the car. Id., p. 16.

14. Ultimately, Northington was not able to locate her license, so Officer Cersosimo went back to his patrol car having obtained her name and date of birth to run a check.  Id.

15. He was able to determine that she had a valid driver's license and was not wanted. Id.

16. At that point in time, two other officers joined Officer Cersosimo on the scene. Id.

17. When Officer Cersosimo returned to the Camry, he asked Northington and Defendant if either had a medical marijuana card and noted that the marijuana blunt was now missing from view. Id., p. 16-17.

18. After denying they had a medical marijuana card, Northington retreived the blunt, calling it a "marijuana blunt," and gave to Officer Cersosimo Id., p. 17, 43.

19. At no time during this stop, did Northington or Defendant claim the smell and the blunt was anything but marijuana. Id., p. 18 and 43.

20. Officer Cersosimo noted that possession of marijuana is a violation of Pennsylvania law. Id.

21. Next, Officer Cersosimo asked if he could search the car, and explained the difference between a consent search and a search that comes about as a result of a search warrant. Id. p., 19.

22. Northington, opting for a search warrant, declined to consent to a search of the vehicle. Id.

23. Officer Cersosimo had both Northington and Defendant step out of the vehicle. Id.

24. He retrieved a jacket for Defendant and provided Ms. Northington with her wallet but kept the remainder of her bag and its contents, and when the tow truck came, he then released both Northington and Defendant. Id.

25. The vehicle was towed to the McKees Rocks police station garage. Id., p. 21.

26. The tow truck driver who towed the Camry had to enter the vehicle briefly, but at no point in time did the tow truck driver search the Camry. Id., p. 22.

27. There was no body or dash cam footage of the incident due to the fact that the McKees Rocks Police Department did not get this equipment until July of 2023, a few months after this incident. Id., p. 20.

**B. The Search Warrant obtained by Officer Cersosimo for the Camry**

28. After having the car towed, Officer Cersosimo completed an application for search warrant for the Camry. ECF 106-1, and Government Ex. 1 from the suppression hearing.

29. The warrant indicated that Defendant was the registered owner of the vehicle. Id.

30. The affidavit of probable cause attached to the search warrant application indicated Officer Cersosimo stopped the Toyota Camry because "[w]hile behind this vehicle it failed to utilize its right turn signal turning onto Gardner Street." Id.

31. The remainder of the affidavit outlines the events as they transpired from the time Officer Cersosimo effectuated the traffic stop until the time the Camry was towed. These events are set forth in FOFs 2-25, above.   Id.

32. Of particular importance, the affidavit mentioned the marijuana blunt which was in plain view once Northington put her window down to talk with Officer Cersosimo – as well as the smell of marijuana which emanated from the vehicle. Id.

33. His affidavit also made note of "the extremely dark window tint" on the Camry which prevented him from seeing inside the vehicle with a flashlight, as well as the "glass jar" of marijuana Officer Cersosimo observed in Northington's bag, while she was searching in her bag for her driver's license. Id.

34. The statements set forth in the affidavit are akin, if not identical, to the statements made by Officer Cersosimo during the suppression hearing and set forth immediately above. Id. The final sentence of the affidavit requests a search warrant for the Camry "due to marijuana being located inside the vehicle . . . ." Id.

35. Based on the statements in the affidavit as summarized above, the magisterial district judge issued a search warrant allowing the Camry to be searched. Id.

**C. Search of the Camry**

36. The search of the Camry following the execution of the search warrant yielded the following items (among others): one black Smith & Wesson handgun with an extended magazine and one black, digital scale. Id.

8

37. Defendant was the registered owner of the vehicle. Id.

**D. The Arrest Warrant for Defendant**

38. The arrest warrant was signed on May 31, 2023, by the same magisterial district judge who issued the search warrant. ECF 106-3 and Government Ex. 2 from the suppression hearing.

39. The arrest warrant noted the offense date was March 26, 2023, and attached the affidavit prepared by Officer Cersosimo which had been attached to the search warrant along with the information concerning the Smith & Wesson handgun that had been located in the center console of the Camry. Id.

40. The charges in the arrest warrant included the follow State charges: (1) person not to possess, use, manufacture, control, sell or transfer firearms; (2) carrying a firearm without a license; and (3) prohibited acts (relating t the marijuana). Id.

41. The arrest warrant also contained an additional affidavit of probable cause prepared by Office Cersosimo.

42. This affidavit specifically noted that Officer Cersosimo's criminal check of Defendant indicated that: (1) Defendant had a criminal history which prevented him from being legally able to possess, transport or obtain a firearm; and (2) he was on "Federal Probation." Id.

43. The affidavit further noted that the black Smith & Wesson handgun had been located inside the center console of the Camry and thus, was within Defendant's reach. Id.

44. Officer Cersosimo testified that this gun was within the driver's reach as well but that the driver had not been charged with a violating the Uniform Firearms Act. Id., p. 36.

**E. Officer Cersosimo's Testimony**

45. The Court finds all of the above facts to be true based upon the credible testimony of Officer Cersosimo.

**F. Other Hearing Evidence**

46. Defendant proffered three exhibits which were admitted into evidence without objection during the suppression hearing: (1) Exhibit A was printout of a Google map showing, among other things, the intersection of Ella and Gardner Streets; (2) Exhibit B was a report prepared by Jason Lupoi, Ph.D., who Defendant proffered as an expert in chemical analysis of botanical plants, and who suggested there are imperceptible differences between cannabis, hemp, and marijuana; and (3) Exhibit C was a formal statement from Jesse Worsk, owner of Black Bear Hemp Dispensary, which suggested there are nearly undetectable differences in both the appearance and odor of hemp and other high THC-content flowers requiring laboratory tests to determine the amount THC content in a sample.

## III. CONCLUSIONS OF LAW

**1. The Court concludes as a matter of law that the Government met its burden of proof that Officer Cersosimo had a legal basis to stop the black Toyota Camry.**

The Fourth Amendment protects people against unreasonable searches and seizures. U.S. Const. Amend. IV. "Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause." *United States v. Lewis*, 672 F.3d 232, 237 (3d Cir. 2012) (quoting *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002)). It is well-settled that a traffic stop is a "seizure" under the Fourth Amendment. *See, e.g., United States v. Johnson*, 452 F. App'x 219, 225 (3d Cir. 2011). As the Third Circuit has explained, the

Supreme Court established a "bright-line rule that any technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for the investigation of some other crime." *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006) (citing *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)). The reasonable suspicion standard applies to routine traffic stops. *Johnson*, 452 F. App'x at 225.

Applying the law to this case, a police officer, such as Officer Cersosimo, may stop a vehicle based on a reasonable suspicion that a violation or crime has occurred. *Terry v. Ohio,* 392 U.S. 1 (1968). The evidence of record demonstrates that while on patrol in his marked vehicle, Officer Cersosimo observed a black Toyota Camry making a turn without first signaling, which violates Pennsylvania's driving code. 75 Pa. Const. Stat. § 3334 (". . . [n]o person shall turn a vehicle . . . without giving an appropriate signal."). Officer Cersosimo credibly testified he stopped the Camry for that reason. The Court concludes that a traffic code violation, such as failing to signal before turning, legitimizes a traffic stop such as the one in which Officer Cersosimo engaged. *United States v. Mosely*, 454 F.2d 249 (3d Cir. 2006).

In addition, prior to initiating the stop, while observing the Camry, Officer Cersosimo noted that the Camry had unusually dark tinted windows such that he could not see inside the Camry. After the Camry stopped and as he approached the car, he again noticed this dark tint on the windows of the car. As Defendant, the passenger, reached into the back to retrieve the driver's bag so that she could look for her driver's license, Officer Cersosimo attempted to illuminate the backseat using his flashlight from outside the rear window, but the beam of light could not penetrate the tint of the rear window. This dark window tint is also a violation of Pennsylvania's motor vehicle code.  75 Pa. Const. Stat. § 4524(e) ("No person shall drive any motor vehicle with any . . . material which does not permit a person to see or view the inside of

11

the vehicle through the . . . side window of the vehicle."). Because "any technical violation of a traffic code legitimizes a stop," *Mosley*, 454 F.3d at 252, and having tinted windows violates 75 Pa. Const. Stat. § 4524, the Court concludes Officer Cersosimo had reasonable suspicion to conduct the *Terry* stop.

**2**. **The Court concludes as a matter of law that the Government met its burden of proof that police officers had probable cause to search black Toyota Camry.**

"The law of search and seizure remains focused on the delicate balance of protecting the right of citizens to be free from unreasonable searches and seizures and protecting the safety of our citizens and police officers by allowing police to make limited intrusions on citizens while investigating crime." *Com. v. Johnson*, 68 A.3d 930, 935 (Pa. Super. 2013), citing *Commonwealth v. Bostick*, 958 A.2d 543, 556 (Pa. Super. 2008).

The existence of probable cause to support a search requires a "fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Burton,* 288 F.3d 91, 103 (3d Cir 2002) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). It is well established that the smell of marijuana creates probable cause for a search. *United States v. Ushery,* 400 F.App'x 674, 676 (3d Cir. 2010) ("It is well settled that the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause."); *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006) ("the smell of marijuana alone  . . . may establish not merely reasonable suspicion, but probable cause.").

Turing to the facts presented here, Officer Cersosimo credibly testified that after approaching the vehicle and speaking through the open driver's window to the driver, he noted a strong odor of marijuana. At the same time, the officer also saw what he believed to be a marijuana blunt resting in plain view in an ashtray in the cupholder located between Defendant and the driver.  When asked for her driver's license and during a half-concealed search through

her bag, the officer who was watching from outside the car through the open window, noted what looked to be a glass jar of marijuana inside the driver's bag. After the driver failed to be able to produce her identification, Officer Cersosimo left the Camry, returned to his vehicle, ran a check on the information the driver had given him, and then returned to the open driver's side window where he noticed that the blunt was now gone. At this point, Officer Cersosimo asked the driver and Defendant if either person had a medical marijuana card, and both denied having one.[4] When asked about the jar of marijuana the officer saw in her bag while she searched for her license, the driver retrieved the marijuana blunt from her bag, called it a "marijuana blunt," and gave it to Officer Cersosimo. At no time during this exchange or the prior interaction between Officer Cersosimo and the driver, did the driver or Defendant state that the marijuana smell was actually hemp or any other substance.[5]

Officer Cersosimo explained to the driver that he wanted to search the vehicle, based on all of his observations – all of which resulted from what he could see and smell through the open driver's side window after stopping the vehicle for its failure to use its turn signal and for the dark tint on the windows[6] – the driver denied his request to conduct a consent search. At this

---

[4] In addition, even if either the driver or Defendant had produced a legal marijuana card, the marijuana was not packaged properly in a dispensary container, which would have been a violation of Pennsylvania law.

[5] During the argument phase of the suppression hearing, Defendant's counsel argued (in part) that the smell of marijuana could not create a reasonable suspicion or probable cause to search the vehicle because the smell and look of marijuana are substantially similar to other plant products. He further noted the plant material in the blunt was never clinically or lab-tested to confirm that it was, indeed, marijuana. Defendant proffered Exhibits B and C in support of this argument. However, the Court concludes that any imperceptible difference between the look and smell of plants containing THC is of no moment in this case. The driver admitted the blunt was a "marijuana blunt," both she and Defendant admitted they did not have medical marijuana cards, and she tried to conceal the contents of her bag.

[6] Under the plain view doctrine, any lawfully positioned police officer, such as Officer Cersosimo, may observe what is displayed for the public, such as the marijuana blunt in the cupholder ashtray, the jar of marijuana visible to the officer as the driver searched through her purse, and smell of marijuana emanating from the car.

point, the officer asked the driver and Defendant to exit the Camry while he called for a tow truck to tow the vehicle to the police station garage until he could apply for a search warrant.

The Court concludes that based on the credible testimony of Officer Cersosimo, the officer had probable cause to search the Camry at the time of the *Terry* stop.

**3**. **The Court concludes as a matter of law that probable cause supported the search warrant for Defendant's black Toyota Camry, and later, the arrest warrant for Defendant.**

### A. The Search Warrant Application

A reviewing court does not conduct a *de novo* determination of probable cause but determines whether a "substantial basis" existed for the magistrate'\'s finding of probable cause. *United States v. Bowers*, 548 F. Supp. 3d 504, 508–09 (W.D. Pa. 2021); *Illinois v. Gates*, 462 U.S. 213, 236 (1983); *United States v. Zimmerman*, 277 F.3d 426, 432 (3d Cir. 2002). In making the determination of whether there was a substantial basis for finding probable cause, "the Court confines itself 'to the facts that were before the magistrate judge, *i.e.*, the affidavit, and [does] not consider information from other portions of the record.' " *Id.* In this context, "[a] court 'is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.' " *United States v. Hodge*, 246 F.3d 301, 305-06 (3d Cir. 2001), *quoting United States v. Whitner,* 219 F.3d 289, 296 (3d Cir. 2000). Probable cause requires a certain connection or "nexus" between the place to be searched, the suspected criminal activity, and the items to be seized. *Bowers*, 548 F. Supp. 3d at 509. This nexus is an expression of the requirement that probable cause exists to believe that evidence of an offense will be found at the place to be searched and can be made by inference. *Id.*

Relying solely on the evidence presented to the Magistrate Judge, Officer Cersosimo indicated in his "application for search warrant" (ECF 99-3, ECF 106-1 and Government Ex. 1) that the place to be searched was the black Toyota Camry which was registered to Defendant. In

this application, Officer Cersosimo provided the magistrate judge with the following information: (1) he was a police officer, who for six years had made "dozens of narcotics and gun arrests;" (2) he stopped the vehicle for failing to use its turn signal before executing a turn; (3) while shining his light into the rear window, he was unable to see inside the vehicle because the tint was too dark and blocked his light from penetrating; (4) he smelled a "strong odor" of marijuana[7], saw a clear jar of marijuana inside the driver's bag while the driver "discreetly kept half the bag closed" as she searched for her identification, and saw a marijuana blunt resting in an ashtray in the cup holder between the driver and Defendant; (5) after running a check on the driver's information and returning to the Camry, he notified the occupants that he smelled marijuana and saw marijuana in the cup holder/ashtray and in the driver's bag; (6) the driver said she had "half smoked" a "marijuana blunt" and retrieved it for the officer; and (7) when the driver would not consent to a search of a vehicle, the officer took the jar of marijuana from her bag and had the vehicle towed. Id. Next, the application indicates that the probable cause belief is based upon the following facts and circumstances: " . . . requesting a search warrant due to marijuana located inside the vehicle on a black Toyota Camry . . .". Id. The "marijuana blunt" was located in plain view when the officer first approach the Camry, and was resting in a ashtray in a cupholder between the driver and Defendant. Id. The Camry also emanated the scent of marijuana. Id. This warrant clearly articulated the place to be searched (the black Toyota Camry) and why it was to be searched (because of the marijuana in the cupholder/ashtray located between the driver and Defendant).

---

[7] Although Defendant tries to argue that the smell could have been from a substance other than marijuana, the driver identified the item in the ashtray/cupholder as a "marijuana blunt" and at no time did either the driver or Defendant, not even when asked if they possessed medical marijuana cards, deny that the substance that the officer both saw and smelled was marijuana.

However, Defendant argues that the search warrant application was overly broad because it requested that the Camry be searched for "any illicit substance," not just marijuana, including but "not limited to" various narcotics and other "non-prescription" substances, "narcotics packaging and trafficking materials including possible proceeds." The Court disagrees.

First, the Court notes that the addition of "any illicit substances" and "packaging and trafficking materials, including possible proceeds," in addition to marijuana, did not broaden the scope of the area to be searched – *i.e.* the Camry's interior regions.

Second, the Court does not find the above language overly broad. In *United States v. Leveto*, the court, considering whether a search warrant was overly broad, noted as follows:

> To determine whether a warrant was overbroad, we must compare the scope of search and seizure authorized by the warrant with the ambit of probable cause established by the supporting affidavit. *In re Impounded Case (Law Firm),* 840 F.2d 196, 200 (3d Cir.1988). In doing so, "the phrases in a search warrant must be read in context and not in isolation." *United States v. Conley,* 4 F.3d 1200, 1208 (3d Cir.1993). When a warrant is challenged as overbroad , the issue is whether there exists probable cause to support the breadth of the search that was authorized. Probable cause is a "practical, nontechnical concept." *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). It cannot be "reduced to a neat set of legal rules." *Gates,* 462 U.S. at 232, 103 S.Ct. 2317. As the Supreme Court has observed, a "commonsense, practical" review of the "totality of the circumstances" is necessary to determine whether "in a particular factual context the probability of criminal conduct has been established." *Id.* at 230, 103 S.Ct. 2317. Thus, in determining whether a warrant authorizing seizure of large numbers of documents or other items is properly supported by probable cause and is thus not overbroad, a court must consider the "totality of the circumstances" in the particular case at hand.

*Leveto,* 343 F. Supp. 2d 434, 448 (W.D. Pa. 2004), *aff'd,* 540 F.3d 200 (3d Cir. 2008).

Despite the fact that Defendant contends this search warrant application overreached by requesting a search for narcotics, packaging materials, and money (and not just additional marijuana), given the officer's sighting of a marijuana blunt, confirmation by the driver that it

was a marijuana blunt, and the smell of marijuana emanating from the car, the Court finds that

the totality of all the circumstances as set forth in Officer Cersosimo's affidavit in his application

for the search warrant do not render it overly broad, and more importantly, unequivocally

support a finding that probable cause existed to search the black Toyota Camry.

### B. The Arrest Warrant Application

As noted above, once the Camry was searched pursuant to what the Court has now

deemed a valid search warrant, a Smith & Wesson handgun was located in the center console of

the car. The handgun had an extended magazine and given its location, it was easily accessible to

the Defendant, who was seated in the passenger seat, next to the console. The arrest warrant

contained the same information that was found in the affidavit of probable cause that was

submitted by Officer Cersosimo for the search warrant, but also contained a supplement prepared

by the officer noting: (1) the handgun had been located in the center console of the car; and (2) a

criminal background check on Defendant showed that he had pled guilty to "an A30 manufacture

of a controlled substance" and therefore, he could not legally possess, transport, or obtain a

firearm.[8] The arrest warrant also noted that Defendant was to be arrested for violating

18 Pa.C.S.A. § 6105. Section 6105 reads in relevant part:

> (1) A person who has been convicted of an offense enumerated in
> subsection (b), within or without this Commonwealth, regardless of the
> length of sentence or whose conduct meets the criteria in subsection (c)
> shall not possess, use, control, sell, transfer or manufacture or obtain a
> license to possess, use, control, sell, transfer or manufacture a firearm in
> this Commonwealth.

Based the fact that the firearm was located in a car registered to Defendant, and given

that when the officer stopped the car Defendant was seated immediately adjacent to the weapon

---

[8] Again, the Camry at issue was registered to Defendant, the handgun was found within the center console of Defendant's Camry within Defendant' reach as a passenger, and the officer confirmed through a criminal record search that it would be illegal for Defendant to possess such a handgun.

which was concealed in the center console, the Court concludes as a matter of law that probable existed for the issuance of the arrest warrant.

**IV. CONCLUSION**

Based upon the Court's foregoing Findings of Fact and Conclusions of law, the Defendant's motion to Suppress shall be DENIED.

**ORDER OF COURT**

AND NOW, this 2nd day of May, 2025, Defendant's Motion to Suppress (ECF 99) is

DENIED. Evidence of  Smith & Wesson handgun which led to the eventual arrest of Defendant

will be permitted to be used during trial.

By the Court,

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:     All ECF Registered Counsel of Record