IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

        Plaintiff,                              Criminal No. 23-0114
                                                        ELECTRONICALLY FILED

     v.

JAIMON WOODS,

        Defendant.

**MEMORANDUM ORDER**

Before the Court is Defendant's Motion to Dismiss Indictment for Lack of Jurisdiction filed at ECF 97, and Defendant's Motion to Dismiss Indictment pursuant to the Second Amendment of the United States Constitution filed at ECF 115. The Government filed a response to each of these Motions (ECF 107 and ECF 119), making all of the issues ripe for adjudication. For the reasons set forth below, the Court will deny both of Defendant's motions.

**I. BACKGROUND**

This case comes to the Court on a Criminal Complaint dated June 1, 2023. ECF 1.

On March 26, 2023, a McKees Rocks police officer (Officer Eric Cersosimo) stopped a car registered to Defendant for failing to use a turn signal while making a turn. Defendant was a passenger in the car and his girlfriend was the driver. Upon approaching the car, Officer Cersosimo smelled marijuana and saw a half-smoked marijuana blunt, in an ashtray located in the cup holder. When the officer asked the driver to produce her identification, Defendant's girlfriend opened her bag, attempting to shield its contents from Officer Cersosimo, but he observed what looked to be clear jar of marijuana in her bag. When asked if she would consent

to a search of the vehicle, Defendant's girlfriend declined, and the car was towed to the McKees Rocks Police station until a search warrant could be obtained.

On March 26, 2023, a search warrant for the vehicle was obtained, and a Smith & Wesson .380 caliber handgun with an extended magazine was retrieved from the center console of the vehicle. In addition, marijuana was recovered from the side pouch of the girlfriend's purse along with plastic baggies. A small black digital scale was also recovered from the vehicle. The recovery of these items pursuant to the search warrant led to an arrest warrant for Defendant dated May 31, 2023.

On June 1, 2023, the McKees Rocks police executed the arrest warrant for Defendant. Defendant was in a vehicle at the time of his arrest, and after removing him from the car, during the pat down process, a Beretta 9000s handgun was found tucked into Defendant's waistband. Baggies with crack cocaine were found inside the vehicle's center console. As a result of finding the Beretta and the crack cocaine, a criminal complaint was filed in the instant matter.

Defendant has appeared before this Court in a prior federal multi- defendant case, and therefore, some of the background from the earlier case is noted below.

Defendant previously came before this Court in case number 18-cr-152 (hereinafter "the 2018 case"), as one of twenty-three indicted defendants in a conspiracy case involving guns and drugs. See, case no. 2:18-cr-00152-AJS-20, generally. Defendant pled guilty in that case to being a felon in possession of firearms and ammunition in violation of 18 U.S.C. § 922(g)(1).  He was sentenced by this Court in accordance with his 11(c)(1)(C) plea agreement to a 70-month term of imprisonment to be followed by a three-year term of supervised release. See docket entries 804-1 and 1384 in the 2018 case. Defendant's supervised release in the 2018 case commenced on December 23, 2022, and within six months, on June 2, 2023 (the day after Defendant was

arrested in the immediate case), a Petition for Warrant or Summons for Offender under Supervision was filed by Defendant's federal probation officer. See docket entry 1843 in the 2018 case. The Petition in the 2018 case indicated that Defendant had violated several conditions of his supervised release based on alleged criminal activity that took place on two different dates: March 26, 2023, and June 1, 2023, which also form the basis of the instant criminal matter. Id. [1]

## II. STANDARD OF REVIEW

"A federal indictment requires 'no greater specificity than the statutory language ... so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution.' " *United States v. Keystone Biofuels*, 350 F. Supp. 3d 310, 318 (M.D. Pa. 2018), citing *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007). Indeed, "[i]n evaluating a Rule 12 motion to dismiss, a district court must accept as true the factual allegations set forth in the indictment." *United States v. Huet*, 665 F.3d 588, 595. "[A] pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence." *United States v. Keystone Biofuels*, 350 F. Supp. 3d 310, 318 (M.D. Pa. 2018), citing *United States v. DeLaurentis*, 230 F.3d 659, 660 (3d Cir. 2000).

---

[1] This Court, after discussion and agreement with counsel for Defendant and the Government, agreed that disposition of the charge in the instant matter (the alleged June 1, 2023 possession of a firearm and ammunition by a convicted felon in violation of 18 USC 922(g)(1)), should be determined, first, as it would directly impact the disposition of the alleged June 2, 2023 supervised violation set forth in the Petition in Defendant's 2018 case.

**III. ANALYISIS**

Defendant is charged this one-count indictment with possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. §922(g)(1).  Section 922(g)(1) states, "It shall be unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C.A. § 922. This statute is sometime referred to as the "felon-in-possession statute."

**A. Defendant's Motion to Dismiss for Lack of Jurisdiction (ECF 97) and Defendant's Motion to Dismiss based on *Bruen / Range* (ECF 115)**

Despite its title, Defendant's Motion to Dismiss for Lack of Jurisdiction (ECF 97) raises several arguments as to why the Indictment should be dismissed.  First, Defendant contends that the "Federal Government never had jurisdiction to arrest and prosecute Defendant for possessing a firearm for self-defense." ECF 97, p. 2.  Second, Defendant argues that 18 U.S.C. § 922(g)(1) fails to state an offense against the United States. Id. Next, Defendant claims his Second, Fifth, Ninth, and Tenth Amendment rights were violated. Id. Defendant also contends that 18 U.S.C. § 922(g)(1) is facially unconstitutional. Id., p. 3. Finally, Defendant argues that he possesses "indefeasible right to bear arms for protection of self and his property." Id.

After raising a facial attack on 18 U.S.C. § 922(g)(1) within his jurisdiction argument in his first motion to dismiss filed at ECF 97, Defendant filed a successive motion to dismiss at ECF 115 claiming 18 U.S.C. § 922(g)(1) was unconstitutional as applied to Defendant. For purposes of judicial economy, the Court will discuss the first argument (concerning jurisdiction) which Defendant raised in his first motion to dismiss filed at ECF 97, together, with the "as-

applied" argument raised by Defendant in ECF 115. The remainder of Defendant's arguments

raised in ECF 97 will be discussed thereafter, immediately below.

    **B. Analysis**

       **1. Subject Matter Jurisdiction / Facial and As-Applied Attacks**

    Defendant argues that his Second Amendment rights to bear arms trump any statute

enacted by Congress prohibiting same, thereby rendering the statute (18 U.S.C. § 922(g)(1))

invalid, stripping this Court of subject matter jurisdiction, and requiring the indictment to be

dismissed. ECF 97.

    Defendant's brief in support of his motion (ECF 98) as well as his second motion (ECF

115) both begin by arguing that the Second Amendment and his right to bear arms under the

Second Amendment cannot be infringed by the United States Congress in any manner.

    In support of this argument, Defendant relies on a decision issued in 1875 case by the

Supreme Court of the United States as the controlling law. *United States v. Cruikshank* 92 U.S.

542 (1875). ECF 98, p.4-5. Defendant suggests that American jurisprudence related to the rights

of citizens to bear firearms demonstrates how "18 U.S.C. § 922(g)(1) is an Act of Congress that

*Cruikshank* prohibits, leaving the Federal government without jurisdiction to indict Defendant."

Id. In making this argument, Defendant suggests that Congress was granted no jurisdiction over

Defendant's Second Amendment rights,[2] and by enacting 18 U.S.C. § 922(g)(1), Congress

overstepped its legislative power, thus stripping this Court of subject matter jurisdiction.

---

[2] The Second Amendment of the United States Constitution reads that "[a] well regulated Militia, being
necessary to the security of a free State, the right of people to keep and bear Arms, shall not be infringed."
Relying on the United States Supreme Court case decided in 1875, *United States v. Cruikshank* 92 U.S.
542, 23 L.Ed. 588 (1875), Defendant claims that Congress was prohibited by the United States Supreme
Court's interpretation of the Second Amendment from enacting any law which would infringe on
Defendant's rights to possess a firearm. Simply put, Defendant contends his possession of a firearm
cannot be criminalized by Congress through the enactment of 18 U.S.C. § 922(g)(1).

The Court finds that Defendant's simplistic analysis fails to consider the 150 years of legal jurisprudence since the *Cruikshank* decision. More recently and notably:

In 2008, the Supreme Court of the United States made it clear that Second Amendment conferred an individual right to "keep and bear arms." *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008) ("There seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms."). However, this individual right was carefully qualified by the Supreme Court in *Heller*, when the Court stated:

> Of course the right was not unlimited, just as the First Amendment's right of free speech was not, see, *e.g., United States v. Williams*, 553 U.S. 285, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008). Thus, we do not read the Second Amendment to protect the right of citizens to carry arms for any sort of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for any purpose.

*Id.* In sum, the *Heller* decision protected an individual's right to keep and bear arms for limited purposes, specifically home protection.

Two years after *Heller*, the Supreme Court decided a case brought by individuals who sued Chicago and its suburb of Oak Park for enacting laws effectively banning handgun possession by almost all private citizens. *McDonald v. City Chicago, Illinois*, 561 U.S. 742 (2010). The Supreme Court first noted that in a much earlier decision, the Court had "decisively held that incorporated Bill of Rights['] protections are all to be enforced against the States under the Fourteenth Amendment according to the same standards that protect those personal rights against federal encroachment." *Id.*, at 763, citing *Malloy v Hogan*, 378 U.S. 1 (1964).  In *McDonald*, the Court considered:

> whether the Second Amendment right to keep and bear arms is incorporated in the concept of due process. In answering that question, as just explained, we must decide whether the right to keep and bear arms is fundamental to our scheme of ordered liberty, *Duncan*, 391 U.S., at 149, 88 S.Ct. 1444, or as we have said in a related context, whether this right is

"deeply rooted in this Nation's history and tradition," *Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S.Ct. 2302, 138 L.Ed.2d 772 (1997) (internal quotation marks omitted).

561 U.S. at 765.  Looking to its 2008 decision in *Heller*, the Court concluded, "the need for defense of self, family, and property is most acute in the home . . . we found that this right applies to handguns because they are the most preferred firearm in the nation to 'keep' and use for protection of one's home and family." *Id.* at 767 (some internal quotation marks omitted).

Next, in 2022, the United States Supreme Court, in *New York State Rifle & Pistol Ass'n v. Bruen*, held that the Second and Fourteenth Amendments not only protected the rights of "an ordinary, law-abiding citizen to possess a handgun in the home for self-defense" but those same Amendments would also afford "ordinary, law-abiding citizens [to] have a similar right to carry handguns publicly for their self-defense." *Bruen,* 597 U.S.1, 8-9 (2022) (emphasis added).[3]

Two years later, the United States Supreme Court in *United States v. Rahimi*, 602 U.S. 680 (2024), affirmed the denial of a criminal defendant's motion to dismiss his indictment, holding, "[w]hen a restraining order contains a finding that an individual poses a credible threat to the physical safety of an intimate partner, that individual may -- consistent with the Second Amendment -- be banned from possessing firearms while the order is in effect." 602 U.S. at 690.

Following the *Rahimi* decision, the United States Court of Appeals for the Third Circuit issued an *en banc* decision in *Range v. Att'y Gen. United States of Am.*, 124 F.4th 218 (3d Cir. 2024) ("*Range II*").  In *Range II*, the Court of Appeals decided, through a declaratory judgment action, that the plaintiff, Mr. Range, could not be prohibited from possessing firearms, because he had previously "pleaded guilty in the Court of Common Pleas of Lancaster County to one

---

[3] To put a finer point on these three cases – *Heller* and *McDonald* essentially determined that individual, law-abiding persons had a right to possess a handgun in the home for self-defense. *Bruen* went a step further noting that [law-abiding] persons had a right to carry a handgun outside the home for self-defense purposes.

count of making a false statement to obtain food stamps in violation of Pennsylvania law." *Id.* at 222-23. Specifically, the Court of Appeals held that the Constitution would presumptively protect Mr. Range's proposed conduct, "to possess a rifle to hunt and a shotgun to defend himself at home" and further found that when the burden shifted to the Government to show that Section 922(g)(1), prevented Mr. Range from keeping and bearing firearms, the Government was unable to show that a denial of this right "was part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 232.[4]

---

[4] Additionally, the United States District Court for the Western District of Pennsylvania, in reliance upon Judge Porter's concurring opinion in *Range II* noted:

> "Congress was powerless to regulate gun possession and use" before the New Deal Revolution. 69 F.4th 96, 108 (citing *Cruikshank*, 92 U.S. at 553 for the proposition that Congress lacked the power to infringe the right declared by the Second Amendment). Judge Porter explained:
>
> A New Deal Era attempt at federal gun control is revealing. In 1934, the Roosevelt Administration proposed the National Firearms Act to address the gangster-style violence of the Prohibition Era by reducing the sale of automatic weapons and machine guns. Stymied by the federal government's lack of police power, Attorney General Homer Cummings urged Congress to regulate guns indirectly through its enumerated taxing power.
>
>          *      *      *
>
> The landscape changed in 1937, when the Supreme Court adopted an expansive conception of the Commerce Clause. *See NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937). Newly empowered, Congress promptly enacted the Federal Firearms Act of 1938. For the first time, that law disarmed felons convicted of a "crime of violence," which the Act defined as "murder, manslaughter, rape, mayhem, kidnapping, burglary, housebreaking; assault with intent to kill, commit rape, or rob; assault with a dangerous weapon, or assault with intent to commit any offense punishable by more than one year." Federal Firearms Act, Pub. L. No. 75–785, 52 Stat. 1250 (1938). In 1961, Congress extended the firearms disqualification to all felons, violent or otherwise. *See* An Act to Strengthen the Federal Firearms Act, Pub. L. No. 87-342, 75 Stat. 757 (1961); *see also* 18 U.S.C. § 922(g)(1). *Id.* at 107-08. Therefore, . . . it is clear that firearm regulation is a valid exercise of the Government's power and *Cruikshank* is not the controlling law for determining the Government's jurisdiction over this case and Congress' authority to regulate firearm possession.

*United States v. Jones*, No. CR 21-472-RJC, 2024 WL 776470, at *3–4 (W.D. Pa. Feb. 26, 2024).

Most recently, following the decision in *Range II*, the Court of Appeals for the Third

Circuit in its 2025 decision in *Pitsildes* distilled all of the above law as follows:

> First, we must ask whether "the Second Amendment's plain text covers an
> individual's conduct." *Bruen*, 597 U.S. at 24, 142 S.Ct. 2111. If it does,
> "the Constitution presumptively protects that conduct," *id.*, and we
> proceed to the second step. At that point, "[t]he government must then
> justify its regulation by demonstrating that it is consistent with the
> Nation's historical tradition of firearm regulation." *Id.* To measure
> consistency with traditional firearm regulations, we must ask whether a
> modern regulation is "relevantly similar" to historical predecessors, *id.* at
> 29, 142 S.Ct. 2111 (quoting Cass Sunstein, *On Analogical Reasoning*, 106
> Harv. L. Rev. 741, 773 (1993)), considering "how and why the
> regulation[ ] burden[s] a law-abiding citizen's right to armed self-
> defense," *id.* importantly, though, finding a contemporary regulation to be
> "relevantly similar" to a historical restriction does not require a "historical
> *twin*" or "dead ringer." *Id.* at 30, 142 S.Ct. 2111. Instead, the government
> need only produce a "representative historical analogue." *Id.* (emphasis
> omitted). So even where modern-day restrictions are not identical to
> historical analogues, they "still may be analogous enough to pass
> constitutional muster." *Id.*
>
>     *   *   *
>
> The upshot of these cases is threefold: First, as *Bruen* and *Rahimi* make
> clear, our inquiry into *principles* that underlie our regulatory tradition does
> not reduce historical analogizing to an exercise in matching elements of
> modern laws to those of their historical predecessors. Instead, we must
> consider whether the principles embodied in different strands of historical
> firearm regulations, "[t]aken together," *Rahimi*, 602 U.S. at 698, 144 S.Ct.
> 1889, support contemporary restrictions, all the while remaining vigilant
> "not to read a principle at such a high level of generality that it waters
> down the right," *id.* at 740, 144 S.Ct. 1889 (Barrett, J., concurring).
>
> Second, whatever other recourse may or may not be available, felons
> seeking to challenge the application of § 922(g)(1) at least may bring
> declaratory judgment actions. But to grant such relief, the record must be
> sufficient for a court to make an individualized determination that the
> applicant does not presently pose the kind of danger envisioned by *Rahimi*
> and *Range II.* In keeping with *Heller*'s conclusion that "the Second
> Amendment confers an individual right to keep and bear arms," 554 U.S.
> at 622, 128 S.Ct. 2783, that determination necessarily demands
> individualized fact-finding.
>
> Third, while *Rahimi* and *Range II* did not purport to comprehensively
> define the metes and bounds of justifiable burdens on the Second
> Amendment right, they do, at a minimum, show that disarmament is

justified as long as a felon continues to "present a special danger of
misus[ing firearms]," *Rahimi*, 602 U.S. at 698, 144 S.Ct. 1889, in other
words, when he would likely "pose[ ] a physical danger to others" if
armed, *Range II*, 124 F.4th at 232. Indeed, as Judge Bibas presciently
observed even before *Bruen*, "[a]s an original matter, the Second
Amendment's touchstone is dangerousness," *Folajtar v. Att'y Gen.*, 980
F.3d 897, 924 (3d Cir. 2020) (Bibas, J., dissenting); *see also Kanter v.
Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting)
("[L]egislatures have the power to prohibit dangerous people from
possessing guns."), and our sister circuits have articulated the principle
similarly in light of *Rahimi, see United States v. Bullock*, 123 F.4th 183,
185 (5th Cir. 2024) (per curiam) ("The historical record demonstrates 'that
legislatures have the power to prohibit dangerous people from possessing
guns.' " (quoting *Kanter*, 919 F.3d at 451 (Barrett, J., dissenting))); *United
States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024) ("[O]ur nation's
history and tradition demonstrate that Congress may disarm individuals
they believe are dangerous."); *United States v. Jackson*, 110 F.4th 1120,
1128 (8th Cir. 2024) ("Legislatures historically prohibited possession by
categories of persons based on a conclusion that the category as a whole
presented an unacceptable risk of danger if armed.").

*Pitsilides v. Barr*, 128 F.4th 203, 209-11 (3d Cir. 2025) (footnote omitted).

### a. Defendant's As-Applied Attack on 18 U.S.C. §922(g)(1)

An as-applied challenge "does not contend that a law is unconstitutional as written but

that its application to a particular person under particular circumstances deprived that person of a

constitutional right." See *United States v. Woznichak*, No. CR 21-242, 2023 WL 7324442, at *2

(W.D. Pa. Nov. 7, 2023), quoting *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010).

Defendant argues that the indictment should be dismissed because 18 U.S.C. § 922(g)(1) is

unconstitutional as applied to him. ECF 115.

Because the facts of the indictment in this case must be accepted as true purposes of

Defendant's Rule 12 Motion to Dismiss, it is noted that Defendant was convicted on March 11,

2021, for being a felon-in-possession of a firearm or ammunition. ECF 4. The Court further notes

that at the time Defendant was charged with committing the instant offense, he was on

supervised release (after this 2021 conviction stemming from his guilty plea to a 2018-charged

offense at federal criminal case number 18-0152), for being a felon in possession of firearms. In addition, the indictment outlines four other felonies all of which predate the 2018 indictment, including: two, 2011 convictions for possession of a firearm by a prohibited person and carrying a firearm without a license; and two, 2012 felony convictions for possession with intent to deliver a controlled substance.

The Court acknowledges that Defendant is one of "the people" protected by the Second Amendment. Next, as the above caselaw proscribes, the Court would consider whether the nature of Defendant's proposed course conduct was to carry the handgun for self-defense, but it cannot do so because this would take the Court outside the four corners of the Indictment.  The next step as dictated by the caselaw, is for the Court consider whether the statute as applied to Defendant is "consistent with the historical tradition of firearm regulation." *Bruen*, 142 S.Ct. at 2130.

This Court finds Defendant is unlike Range and is akin to those historical analogues which disarmed individuals who were deemed to "pose a threat to the orderly functioning of society."  *Range* 69 F.4th at 110. Indeed, given Defendant's criminal history, the Court deems Defendant to be a dangerous person that Congress has the power to prohibit from possessing guns. The Court further concludes that barring the possession of firearms by individuals like Defendant is "part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 142 S. Ct. at 2127. Section 922(g)(1) applies to Defendant given his recent criminal history of gun and drug charges.  Accordingly, based on this indictment information which the Court must accept as true, Defendant's as-applied challenge utterly fails given his criminal history, and notably that he was on supervised release at the time he allegedly committed the instant offense.

**b. Defendant's Facial Attack on 18 U.S.C. § 922(g)(1)**

"A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case." *Marcavage*, 609 F.3d at 273 (citation omitted). "A party asserting a facial challenge 'must establish that no set of circumstances exists under which the Act would be valid.' " *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Upon distilling the above-cited Second Amendment caselaw concerning 18 U.S.C. § 922(g)(1), the overarching conclusion is that a person's Second Amendment rights do not entirely immunize him or her from prosecution for possession of firearm. Rather, the Second Amendment protects the rights of nonviolent American citizens to possess firearms, and thus, 18 U.S.C. § 922(g)(1), which prohibits dangerous individuals from possessing firearms, is not unconstitutional on its face. To the contrary, as suggested by the United States Supreme Court in its *Heller* and *McDonald* decisions, preventing dangerous individuals from possessing firearms is consistent with the United States' "historical tradition" of firearms regulation.

In order to prevail on his facial (and thus, his jurisdictional challenge) to 18 U.S.C. § 922(g)(1), Defendant had to demonstrate that the statute violates the Second Amendment in all of its applications. Defendant has failed to convince this Court that the statute is unconstitutional as applied to him, let alone in all circumstances, and for this reason, his facial attack fails.

**2. The Commerce Clause**

Title 18 U.S.C. § 922(g)(1) indicates that is "unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any

firearm . . .".  The Commerce Clause allows Congress to "regulate Commerce . . . among the

several States." U.S. Const. art. I, § 8.

Defendant relies on a concurring opinion written by Justice Thomas in *United States v.*

*Morrison*, 529 U.S. 598 (2000).  Defendant argues that this concurrence demonstrates how

Congress, regulating firearms under the Commerce Clause through 18 U.S.C. § 922(g)(1), "is a

complete destruction of the right of a citizen who has been convicted of a crime that's punishable

by imprisonment for a term exceeding one year from exercising the right to self-defense or any

other lawful purpose." ECF 97.

The Court begins its analysis by noting that Defendant's citation to a concurring opinion

is not sufficient to meet his burden. Additionally, the majority of the Supreme Court in its

opinion in the *Morrison* case held:

> "[M]odern Commerce Clause jurisprudence has "identified three broad
> categories of activity that Congress may regulate under its commerce
> power." 514 U.S., at 558, 115 S.Ct. 1624 (citing *Hodel v. Virginia Surface*
> *Mining & Reclamation Assn., Inc*., 452 U.S. 264, 276–277, 101 S.Ct.
> 2352, 69 L.Ed.2d 1 (1981); *Perez v. United States*, 402 U.S. 146, 150, 91
> S.Ct. 1357, 28 L.Ed.2d 686 (1971)). "First, Congress may regulate the use
> of the channels of interstate commerce." 514 U.S., at 558, 115 S.Ct. 1624
> (citing *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 256, 85
> S.Ct. 348, 13 L.Ed.2d 258 (1964); *United States v. Darby*, 312 U.S. 100,
> 114, 61 S.Ct. 451, 85 L.Ed. 609 (1941)). "Second, Congress is empowered
> to regulate and protect the instrumentalities of interstate commerce, or
> persons or things in interstate commerce, even though the threat may come
> only from intrastate activities." 514 U.S., at 558, 115 S.Ct. 1624 (citing
> *Shreveport Rate Cases*, 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341 (1914);
> *Southern R. Co. v. United States*, 222 U.S. 20, 32 S.Ct. 2, 56 L.Ed. 72
> (1911); *Perez, supra*, at 150, 91 S.Ct. 1357). "Finally, Congress'
> commerce authority includes the power to regulate those activities having
> a substantial relation to interstate commerce, . . . *i.e.*, those activities that
> substantially affect interstate commerce." 514 U.S., at 558–559, 115 S.Ct.
> 1624 (citing *Jones & Laughlin Steel, supra*, at 37, 57 S.Ct. 615).

*Morrison*, 529 U.S at 608–09.

One year after the *Morrison* decision, the United States Court of Appeals for the Third Circuit in *United States v. Singletary*, 268 F.3d 196, 199 (3d Cir. 2001), noted that the Commerce Clause empowered Congress to regulate commerce with foreign nations and among the several States, and through this power, Congress enacted the "felon-in-possession" statute – 18 U.S.C. § 922(g)(1). The Court of Appeals in *Singletary* held:

> The statute can be read to create three crimes for convicted felons: (1) "to ship or transport in interstate or foreign commerce ... any firearm or ammunition"; (2) "to ... possess in or affecting commerce, any firearm or ammunition"; and (3) "to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

268 F.3d at 199. Like the defendant in Singletary,

Defendant here seems to be arguing that the felon-in-possession statute is facially unconstitutional because the conduct it proscribes, specifically the possession of a firearm, does not have a substantial affect upon interstate commerce, and thus, does not constitute a valid exercise of Congress' authority under the Commerce Clause. 268 F.3d at 200.  The Court finds that *Singletary* and its progeny has upheld Congress' rights to regulate commerce through the felon-in-possession statute.

In this case, the Government notes that Defendant does not dispute that the handgun he possessed was manufactured outside of the Commonwealth of Pennsylvania.  Thus, in order for the gun to be found inside Defendant's waistband during his arrest in Pennsylvania, the gun had to have travelled through interstate commerce. The Court therefore finds Defendant's argument concerning the intersection of the Commerce Clause and the felon-in-possession charge to be meritless.

Defendant also appears to argue that Commerce Clause does not allow the felon-in-possession statute to exist due to Defendant's independent right to bear arms under the Second

Amendment.  As noted by the Government, Defendant failed to cite to any law explaining how any of Defendant's Constitutional rights cannot be regulated by Congress. For example, while all Americans have a right to free speech under the First Amendment, laws have been enacted prohibiting hate speech.

Next, Defendant relies upon the Ninth Amendment to argue that the Commerce Clause cannot eliminate an American citizen's constitutional rights.  The Ninth Amendment reads: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." Stated simply, the Ninth Amendment indicates that even if a specific right is not listed in the Constitution, it does not mean that that right is not protected.

The Court finds that the Ninth Amendment is inapplicable here given that the right to bear arms is an enumerated right as set forth in the Second Amendment to the Constitution, so Defendant's argument with respect to the Ninth Amendment is of no moment.

### 3. Second, Fifth, Ninth, and Tenth Amendment Rights

The Court has already addressed Defendant's Second Amendment and Ninth Amendment claims in subparts 1. and 2., above, and that analysis will not be repeated here.

Turning to the Fifth Amendment which states in relevant part that, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law[.]" Defendant argues that that Congress by enacting the felon-in-possession statute (18 U.S.C. §922(g)(1)), violated the Second and the Ninth Amendments and thus, necessary violated the Fifth Amendment by stripping Defendant of his liberty and property. Because the Court has already determined that Defendant's Second and Ninth Amendment rights were not infringed given the facts present in this case, Defendant's Fifth Amendment argument, which is predicated on a Second and/or Ninth Amendment violation, will likewise be denied.

In addition, Defendant argues the process by which 18 U.S.C. § 922(g)(1) was enacted by Congress was somehow flawed and/or did not comport with the requirements such as Congressional hearings or findings before enacting the felon-in-possession law. For example, Defendant contends that Congress violated due process by failing to hold debates on the floor before enacting 18 U.S.C. § 922(g)(1). However, Defendant offers no legal basis to support his argument that legislation enacted with "debate" on the floor is unconstitutional. Moreover, the constitutionality of 18 U.S.C. § 922(g)(1) has been considered, repeatedly, as evidenced by the decisions discussed in subpart 1. above, and on all occasions the felon-in-possession law has been deemed to be constitutionally sound.

Defendant also argues that his Tenth Amendment rights were violated by Congress' enactment of the felon-in-possession law. The Tenth Amendment reserves power – not delegated to the United States by the Constitution, nor prohibited by the Constitution to the States – to the States respectively, or to the people.

In making his Tenth Amendment argument, Defendant suggests that Congress when it enacted Title 18 U.S.C. § 922(g)(1) violated the separation of powers. Defendant claims "[t]here are no circumstances that can exist which the Act would be valid under *Cruikshank*." ECF 97. Further, Defendant suggests that "until Congress can show that the Second Amendment was superseded by Federal Authority, through clear Congressional intent or was delegated powers from the States, §922(g)(1) violates expressed constitutional limitations on Congress in the Constitution." Id.

The Court finds that Defendant's Tenth Amendment argument is derivative of the Second Amendment argument he raised with regard to his subject matter jurisdiction claim discussed in subpart 1., above. The Tenth Amendment is not violated "[i]f Congress acts under one of its

enumerated powers," *United States v. Parker*, 108 F.3d 28, 31 (3d Cir. 1997) (quotation omitted), and the enactment of 18 U.S.C. § 922(g)(1) barring felons from possessing firearms constitutes a valid exercise of Congressional power under the Commerce Clause.

Based on the foregoing, the Court does not find that Defendant's Second, Fifth, Ninth, or Tenth Amendment rights have been violated.

## 4. Constitutionality of 18 U.S.C. § 922(g)(1)

Defendant also contends that 18 U.S.C. §922(g)(1) is facially unconstitutional. As this Court explained in subpart 1., above, Defendant failed to establish that no set of circumstances exists under which the felon-in-possession statue would be valid. Through the recitation of recent United States' Supreme Court caselaw as well as the case law emanating from the United States Court of Appeals for the Third Circuit on this topic, this Court concludes that the felon-in-possession statute is not unconstitutional on its face. Because the Court's decision on this point was explained in greater detail above, it will not be reiterated here.

## 5. Indefeasible Right to Bear Arms – Standing Argument

Finally, Defendant argues that he possesses an "indefeasible right to bear arms for protection of self and his property." He claims that the Government fails to meet the standing requirement of Article III of the United States Constitution, arguing that "[t]he possession of a firearm does not constitute a criminal act." ECF 98., p 33. The remainder of this argument appears to conflate several of the issues addressed above into one argument. For example, Defendant argues that because "mere possession" is not a criminal act, and his "mere possession of a firearm is not an economic activity" then his indictment in this case is really a civil matter – not a criminal one – and because the Government was not injured by Defendant's possession of a weapon, it has no standing to bring a civil lawsuit against him. The Court disagrees with

Defendant. The Defendant has been indicted for allegedly violating a federal <u>criminal</u> statute, not a civil one, and thus, the Government has standing to prosecute Defendant, and this Court has jurisdiction to adjudicate the matter given the location of Defendant's arrest and the gun seizure. Because Defendant's arguments suggesting 18 U.S.C. §922(g)(1) is unconstitutional all fail, his argument regarding lack of standing is likewise flawed and will be denied.

## IV. CONCLUSION

Based on the foregoing law and authority, Defendant's Motions to Dismiss the Indictment (ECF 97 and ECF 115) will be denied.

## ORDER

AND NOW, this 10th day of June 2025, after careful consideration of all argument presented and for all of the reasons set forth herein, Defendant's Motion to Dismiss Indictment for Lack of Jurisdiction (ECF 97), and Defendant's Motion to Dismiss Indictment (ECF 115) are **DENIED.**

By the Court,

<u>s/ Arthur J. Schwab</u>
Arthur J. Schwab
United States District Judge

cc:    All counsel of record